UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| DONALD STENDER and | ) |
| DIANE STENDER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:12 CV 41 |
| | ) |
| BAC HOME LOANS SERVICING LP, and | ) |
| BANK OF AMERICA NA, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

**I. BACKGROUND**

Plaintiffs Donald and Diane Stender allege that they mortgaged two properties, referred to in this opinion as the "Lowell property" and the "Monell property," in April of 2007. (Compl. at 1, 3.)[1] Though it is not clear from the pleadings who originated the loans, at some point defendant BAC Home Loans Servicing LP ("BAC") acquired them. According to defendants' answer, BAC and Bank of America NA ("BANA") merged in 2011, and are now known simply as BANA. (Ans. ¶ 2.) It is undisputed that at some point, plaintiffs defaulted on the mortgages.

Plaintiffs claim that in December of 2009 and February of 2010, plaintiffs sought loan modification agreements for the Monee and Lowell properties, respectively.

---

[1] A copy of the Monee mortgage submitted by defendants suggests that the Monee property was originally mortgaged in 2006 (DE # 16-2 at 1), but this discrepancy has no effect on the present motion.

(Compl. at 1, 3.) Plaintiffs allege that they timely accepted the modification agreements and completed all the steps required of them. (*Id.*) They further allege that at least with respect to the Lowell property, they made monthly payments in accordance with the modification agreement. (*Id.* at 2.) Plaintiffs claim that defendants, who now service the mortgages, refuse to honor the modification agreements. (*Id.* at 2, 3.)

Plaintiffs sued for damages, claiming breach of each of the loan modification contracts (Counts I and II), negligence (Count III), negligent and/or intentional infliction of emotional distress (Count IV), and violation of the Fair Debt Collection Practices Act ("FDCPA") (Count V). (DE # 1.) Defendants answered (DE # 13), and have now moved for judgment on the pleadings on all counts (DE # 16.) Plaintiffs responded, conceding that their negligent infliction of emotional distress claim should be dismissed, but opposing defendants' motion as to the remaining claims. (DE # 18.) Defendants have replied (DE # 20), and the motion is now ripe for ruling.

## II.     LEGAL STANDARD

In reviewing a motion for judgment on the pleadings pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(c), the court applies the same standard that is applied when reviewing a motion to dismiss pursuant to RULE 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). That means that the court "take[s] the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Id.* The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." RULE 8(a)(2). While there is no need for detailed factual

2

allegations, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Pisciotta,* 499 F.3d at 633 (citation omitted). Factual allegations also must be enough to raise a right to relief above the "speculative level" to the level of "plausible." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. In examining the facts and matching them up with the stated legal claims, the court must give "the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psych. & Neur., Inc.,* 40 F.3d 247, 251 (7th Cir. 1994).

## III.  DISCUSSION

### A.  Breach of Contract

The dispute regarding plaintiffs' contract claims (Counts I and II) revolves around Indiana's statute of frauds. The statute requires a contract involving the sale of real estate to be in writing and signed by "the party against whom the action is brought." IND. CODE § 32–21–1–1(b). A document modifying a mortgage is such a contract. *Woodall v. Citizens Banking Co.,* 507 N.E.2d 999, 1000 (Ind. Ct. App. 1987). In a proceeding for enforcement of the document, only the "party against whom the action is brought" needs to have signed it. *Grabill Cabinet Co., Inc. v. Sullivan,* 919 N.E.2d 1162, 1166-67 (Ind. Ct. App. 2010); *see also Graham v. Henderson Elevator Co.,* 111 N.E. 332, 335

3

(Ind. Ct. App. 1916) ("'The party to be charged,' under the statute of frauds, means the defendant to the action. The memorandum must be signed by him but need not necessarily be signed by the plaintiff in the suit."). According to defendants, the loan modification is signed by plaintiffs, only, suggesting that there was no meeting of the minds and meaning that, under the statute of frauds, it cannot be enforced by plaintiffs against defendants.

Plaintiffs do not dispute the fact that defendants did not sign the loan modification agreement, but they allege that a signed cover letter, which accompanied the modification offer at least as to the Lowell residence, satisfies the signature requirement of the statute of frauds. Defendants argue that the court cannot even consider the possibility of cover letters, because plaintiffs did not allege any facts regarding their existence in their complaint.

Defendant's argument is incorrect for two reasons. First, it is entirely appropriate for plaintiffs to articulate facts in their response to a motion like defendants' to support their argument that their contract claim should not be dismissed. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010) (nothing precludes plaintiff from suggesting to the court a set of facts, consistent with the well-pleaded complaint, that shows that the complaint should not be dismissed).; *Milazzo v. O'Connell*, 925 F. Supp. 1331, 1340 (N.D. Ill. 1996) ("Milazzo's complaint adequately describes her procedural due process claim, and she is not forbidden from alleging new facts, or even new legal theories about that claim, in her response brief.").

Second, the statute of frauds is an affirmative defense. *Oedekerk v. Muncie Gear Works,* 179 F.2d 821, 824 (7th Cir. 1950) (interpreting Indiana law). "[C]omplaints need not anticipate and attempt to plead around defenses." *United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004). True, "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense," *U.S. Gypsum Co. v. Ind. Gas Co., Inc.,* 350 F.3d 623, 626 (7th Cir. 2003), but a plaintiff's omission of facts from her complaint which would ultimately defeat an affirmative defense does not justify dismissal. *Id.; Hollander v. Brown,* 457 F.3d 688, 691 n.1 (7th Cir. 2006). Accordingly, it is not fatal to plaintiffs' complaint that it does not contain facts regarding the precise method by which the signature requirement of the statute of frauds was satisfied. Plaintiffs were not required to plead such facts, and their omission is not grounds for dismissal.

Interestingly, at least one other court has concluded that a cover letter defendant BAC sent along with a loan modification offer satisfied the signature requirement of the statute of frauds. *See, e.g., White v. BAC Home Loan Serv.,* No. 10–cv–0119, 2011 WL 4479299, at *8 (N.D. Ga. Sept. 26, 2011) (Georgia law). But at this stage of the litigation, it really makes no difference whether the court considers the alleged existence of cover letters or not. What matters is whether, under Indiana law, the signature requirement of the statute of frauds *must* be satisfied with a pen-and-ink signature at the end of a contract. If it must, then defendants are correct that the lack of such a signature on the loan modification documents in this case damns plaintiffs' contract claims. But if the signature requirement can be satisfied in other ways, then defendants' argument fails.

"The [Indiana statute of frauds] is designed to preclude fraudulent claims which would probably arise when one person's word is pitted against another's." *Hrezo v. City of Lawrenceburg,* 934 N.E.2d 1221, 1227 (Ind. Ct. App. 2010). To satisfy the statute, an enforceable contract for the sale of land must be evidenced by some "writing": (1) which has been signed by the party against whom the contract is to be enforced or his authorized agent; (2) which describes with reasonable certainty each party and the land; and (3) which states with reasonable certainty the terms and conditions of the promises and by whom and to whom the promises were made. *Id.*

The "writing" need not be the contract itself; for example, the terms of a contract can be extracted from written communications between two parties. *Highland Inv. Co. v. Kirk Co.,* 184 N.E. 308 (Ind. Ct. App. 1933) (contract to dispose of property by will discerned from letters and telegrams). Of course, the aforementioned *Hezro* requirements must still be met. Thus, when a series of communications fails to sufficiently provide the terms and conditions of the contract, the statute of frauds is not satisfied. *Mason Produce Co. v. Harry C. Gilbert Co.,* 141 N.E. 613 (Ind. 1923) (series of telegrams omitting number of pounds to be sold and the sellers name did not satisfy statute of frauds because essential parts of a contract of sale were missing).

Under Indiana law, the contract must also be "signed," but the signature can come in several forms. For example, use of the drafter's own name in the title of the document can satisfy the signature requirement. *Thrift Trust Co. v. White,* 167 N.E. 141 (Ind. Ct. App. 1929) (deceased use of her own name in title of document, "The Will of

Belle Stockman," was sufficient to satisfy signature requirement of statute of frauds). Additionally, a company logo can constitute a signature, depending on the intent of the drafter. *Owen v. Kroger Co,* 936 F. Supp. 579, 583-84 (S.D. Ind. 1996) (interpreting signature requirement of Indiana U.C.C. statute of frauds). Further, an admission by the party to be charged can satisfy the signature requirement. *Consol. Servs. Inc. v. KeyBank Nat'l Ass'n,* 185 F.3d 817, 820 (7th Cir. 1999) (interpreting Indiana law).

In short, there are a number of ways by which a "memorandum" memorializing a contract can be formed under the statute of frauds, and a number of ways by which the statute's signature requirement can be satisfied other than a pen-and-ink signature at the end of the document. Defendants have pointed out that they did not physically sign the end of the loan modification document like plaintiffs did, but that is all. They have not demonstrated that the signature requirement has not been satisfied, as is their burden on an affirmative defense. *See Laouini v. CLM Freight Lines, Inc.,* 586 F.3d 473, 475 (7th Cir. 2009). Accordingly, plaintiffs' contract claims survive this stage of the litigation.

**B.     Negligence**

Plaintiffs have also sued for negligence (Count III), claiming that defendants negligently failed to comply with the terms of the loan modification agreements. Defendants argue that the claim is barred by the economic loss doctrine.

The economic loss doctrine precludes tort liability for purely economic loss—that is, pecuniary loss unaccompanied by any property damage or personal injury. *Indianapolis-Marion County Pub. Library v. Charlier Clark & Linard, P.C.,* 929 N.E.2d 722,

727 (Ind. 2010). In the context of contract disputes, the doctrine has been phrased as requiring that where a contract exists, the contract is the only available remedy (provided that the loss is solely economic in nature and there is an absence of damage to other property or persons). *Thalheimer v. Halum,* 973 N.E.2d 1145, 1151 (Ind. Ct. App. 2012). However, the economic loss doctrine prohibits tort liability for pure economic loss whether or not the parties are technically in privity of contract. *Indianapolis-Marion County,* 929 N.E.2d at 736.

Plaintiffs argue that their alleged losses are not purely economic, because in addition to pecuniary losses, they also suffered injuries to their credit score and reputations. However, Indiana law appears to reject the concept of intangible harm as justifying recovery through a claim of negligence. In *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933 (Ind. Ct. App. 1996), the Indiana Court of Appeals rejected the plaintiffs' argument that harm to their intangible interest in the practice of law was tantamount to physical harm to property, and thus exempt from the economic loss doctrine. *Id.* at 939. The court reasoned that "[n]egligence theory protects interests related to safety or freedom from physical harm. This includes not only personal injury but damage caused by defective personal property. However, when there is no accident and no physical harm so that the only loss is pecuniary in nature, courts have denied recovery under the rule that purely economic interests are not entitled to protection against mere negligence." *Id.* at 938.

Given *Bamberger,* this court must reject plaintiffs' argument that intangible alleged harms such as injuries to their credit score and reputations can be remedied with a claim for negligence. Because plaintiffs' claims are purely economic in nature, plaintiffs' negligence claim is barred by the economic loss doctrine, and must be dismissed.

C. **Intentional Infliction of Emotional Distress**

Plaintiffs also claim intentional infliction of emotional distress ("IIED") (Count IV). To establish the tort of IIED under Indiana law, a plaintiff must show that the defendant (1) engaged in extreme and outrageous conduct, (2) that intentionally or recklessly, (3) caused, (4) severe emotional distress to another. *Doe v. Methodist Hosp.,* 690 N.E.2d 681, 691 (Ind. 1997). Defendants argue that plaintiffs have not alleged sufficiently extreme and outrageous conduct, nor have they plausibly alleged that defendants intended to cause plaintiffs emotional harm.

This court agrees. Historically, Indiana courts have not permitted IIED claims based on contractual or economic harm, finding the conduct insufficiently extreme and outrageous to justify the tort as a matter of law. *Comfax v. N. Am. Van Lines, Inc.,* 587 N.E.2d 118, 127 (Ind. Ct. App. 1992) (economic loss not sufficiently serious in nature to justify IIED claim); *Mehling v. Dubois County Farm Bur. Coop. Ass'n,* 601 N.E.2d 5, 9 (Ind. Ct. App. 1992) (IIED unavailable in breach of contract case); *McCreary v. Libbey –Owens–Ford Co.,* 132 F.3d 1159, 1167 (7th Cir. 1997) ( "Indiana courts have been reluctant to award damages for intentional infliction of emotional distress in

9

employment cases."). This court similarly declines to permit an IIED claim based on contractual and/or economic harm, such as that alleged by plaintiffs.

Further, plaintiffs are unable to establish that their IIED claim is plausible enough to satisfy RULE 8. "The intent to harm emotionally constitutes the basis for the tort of an intentional infliction of emotional distress." *Ledbetter v. Ross,* 725 N.E.2d 120, 124 (Ind. Ct. App. 2000). In other words, intent is a necessary element of the tort. *See id.; Cullison v. Medley,* 570 N.E.2d 27, 31 (Ind. 1991). The plausibility standard applies even to allegations regarding states of mind, like intent. *Iqbal,* 129 S. Ct. at 1952. Plaintiffs allegations – that defendants lured them into signing loan modification agreements but now refuse to honor them – suggest that perhaps defendants are dishonest and acted with selfish economic motivation. But plaintiffs' allegations do not permit any plausible inference that defendants' intention was to harm plaintiffs emotionally. Accordingly, plaintiffs' IIED claim is dismissed.

### D. Fair Debt Collection Practices Act

Plaintiffs' final claim is that defendants violated the FDCPA (Count V). Defendants present two arguments for the dismissal of this claim. Defendants' first argument is that plaintiffs' FDCPA allegations lack plausibility generally. The court disagrees. Plaintiffs allege that defendants have refused to honor a valid loan modification contract, and as a result have attempted to collect amounts in violation of the statute. (Compl. at 5.) Plaintiffs further propose in their response brief, as they are permitted to do, *Reynolds,* 623 F.3d at 1147, that defendants have attempted to collect

late fees and interest above and beyond what is allowed pursuant to what plaintiffs claim are valid loan modification agreements. These allegations are sufficient to put defendants on notice of a plausible claim under the FDCPA. *See* 15 U.S.C.A. § 1692f (prohibiting "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

Defendants' second argument is that the current mortgage servicer, BANA, is a "creditor," not a "debt collector," under the FDCPA, thus exempting it from the statute's provisions. Plaintiffs retort that because BANA did not originate the loan, only later acquired it, it should be classified as a "debt collector," not a "creditor." Neither party disputes that the loans did not originate with BANA but were at one point assigned to BANA; the parties simply dispute the legal significance of this assignment.

The FDCPA distinguishes between "debt collectors" and "creditors." Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," S. Rep. 95–382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696, are not covered by the statute. Instead, the FDCPA is aimed at debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *See id.*

As the Seventh Circuit Court of Appeals has explained, "[f]or purposes of applying the [FDCPA] to a particular debt, these two categories—debt collectors and creditors—are mutually exclusive." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536

(7th Cir. 2003). "However, for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category. If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector." *Id.* In order to distinguish between these two categories, the FDCPA uses the status of the debt at the time of the assignment:

> (6) The term "debt collector" means any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include—
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a. "In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Schlosser,* 323 F.3d at 536; *see also* S. Rep. 95–382, 95th Cong. 1st Session 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1698 (1977) ("[T]he committee does not intend the definition [of debt collector] to cover . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing[.]").

Of critical importance to this determination is precisely when each of plaintiffs' mortgages went into default and when the assignment of the mortgages to defendants occurred. Plaintiffs did not allege these facts in their complaint, but this omission is not

12

fatal. As explained above, "once the plaintiff pleads sufficient factual material to state a plausible claim – that is, sufficient to put the defendant on notice of a plausible claim against it, nothing in *Iqbal* or *Twombly* precludes the plaintiff from later suggesting to the court a set of facts, consistent with the well-pleaded complaint, that shows that the complaint should not be dismissed." *Reynolds,* 623 F.3d at 1147. As this court has already stated, plaintiffs have pleaded a plausible FDCPA claim. Further, plaintiffs hypothesized in their response brief that their debts could have been in default when defendants acquired the mortgages. The court is to give "the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan,* 40 F.3d at 251. Thus, the question is whether plaintiffs' hypothesis that plaintiffs were in default on their mortgages when the mortgages were assigned to defendants is consistent with the complaint's allegations.

In a somewhat half-hearted attempt to prevail on this issue, defendants have submitted a document entitled an "Assignment of Mortgage," showing that the Lowell property (only) was assigned to BAC in 2011. (DE # 16-6.) The court could consider this document upon converting the present motion into one for summary judgment. FED. R. CIV. P. 12(d) (requiring court to convert RULE 12(c) motion into RULE 56 motion if matters outside the pleadings are presented to and not excluded by the court). However, such a conversion is unnecessary, as this document proves nothing without additional evidence of the dates of default (not to mention evidence regarding assignment of the Monee mortgage).

In any event, plaintiffs allege in their complaint that they sought loan modifications in 2009 and 2010. It is entirely consistent with these allegations for plaintiffs to suggest that they had done so because by that point they had defaulted on their mortgages. This would have occurred before 2011, when defendants suggest the Lowell property was assigned to them. If plaintiffs' hypothesis proves correct, and they were in default before the mortgages were assigned to defendants, then defendants would qualify as "debt collectors." Put simply, at this time, a set of facts consistent with the plausible allegations of the complaint could establish that defendants were "debt collectors" under the FDCPA, so the court cannot dismiss plaintiffs' FDCPA claim based on defendants' argument.

## IV. CONCLUSION

For the foregoing reasons, defendants motion for judgment on the pleadings is **GRANTED** as to counts III and IV, **and DENIED** as to Counts I, II, and V**.** (DE # 16.)

**SO ORDERED.**

Date: March 6, 2013

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT